In the Matter of the Judicial Settlement of the Account of Proceedings of JOANNA R. CLEARY, as Executrix of the Last Will and Testament of ANNA FITZPATRICK, Deceased, as to the Acts and Doings of Said ANNA FITZPATRICK; as Executrix under the Last Will and Testament of SARAH E. FITZPATRICK, Deceased.

Surrogate's Court, Albany County, March 25, 1929.

*Joseph F. McCloy* [*Pattison & Pattison* of counsel], for the accounting executrix.

*Joseph C. Behan* [*Frank A. Pedlow* of counsel], for T. George Hodges, as administrator, etc.

SCHENCK, S. Objections have been made to the account of proceedings of Joanna R. Cleary, as executrix of the last will and testament of Anna Fitzpatrick, as and to the acts and doings of said Anna Fitzpatrick during her lifetime in the capacity of executrix of the will of Sarah E. Fitzpatrick by the administrator c. t. a. of said Sarah E. Fitzpatrick. The objections in substance charge fraud and undue influence practiced upon Anna Fitzpatrick by Joanna R. Cleary and other persons in obtaining the transfer of an undivided one-half interest in certain real property included in the estate of Sarah E. Fitzpatrick, deceased.

Sarah E. Fitzpatrick died September 28, 1925, at the city of Watervliet, leaving a last will and testament in which she designated Anna Fitzpatrick, her sister, and Thomas S. Walsh, executors, both of whom qualified January 7, 1926. By the terms of the will Anna Fitzpatrick was given a life estate in both the personalty and realty " with full power to use all or any part of the principal or income therefrom." The will further provided that " upon the death of my sister, Anna Fitzpatrick, I give and bequeath the principal and income thereof which has not been used then remaining in the hands of my said sister Anna Fitzpatrick, as follows: "

Then follow numerous legacies disposing of the entire estate. The estate consisted of personal property of approximately $12,000 and an undivided one-half interest in premises located on Third avenue in the city of Watervliet, the value thereof being approximately $4,000. The other undivided half interest in said real estate was owned by Anna Fitzpatrick at the time of Sarah Fitzpatrick's death.

The resignation of Thomas S. Walsh, one of the executors, was accepted by decree of this court entered January 21, 1927, and the First Trust Company was named as trustee, but refused to qualify as such. Anna Fitzpatrick filed a petition for permission to resign on June 10, 1927, on which date a decree was entered consenting to her resignation. Later by petition filed November 14, 1927, she stated that she had reconsidered her petition of June 10, 1927, and asked permission to withdraw the same and continue as executrix. Six days after the filing of this last petition she died.

It appears that Anna Fitzpatrick and her sister Sarah Fitzpatrick lived together in Watervliet until the death of the latter, each owning an undivided one-half interest in the real property occupied by them. Anna Fitzpatrick continued to live in the Watervliet home for about fourteen months after her sister's death, and during that period conveyed her own half interest in the real property to Joanna R. Cleary, a second cousin. Thereafter she moved to New York and there lived with the Clearys until her death which occurred on November 20, 1927. While living at the Cleary home she signed an agreement, dated July 18, 1927, with Joanna R. Cleary, which recites that she is without means of support other than her interest in the estate of Sarah E. Fitzpatrick, and in order that she might be secure in her maintenance and support during the remainder of her lifetime Joanna R. Cleary agreed to support and maintain her for a period of the remainder of her natural life, or for a period of not to exceed two years and six months from the date of said agreement, whichever was the shorter period, and in consideration therefor said Anna Fitzpatrick agreed to convey to Joanna R. Cleary the half interest of the estate of Sarah E. Fitzpatrick in the Watervliet real estate for the sum of $4,000. The agreement further provided that Joanna R. Cleary was to pay the said $4,000 by a series of notes each in the amount of $133.33, without interest, the first note being payable thirty days from the date of the agreement and every thirty days thereafter one note was to become due, until the last note was paid. Said Joanna R. Cleary also executed a mortgage to Anna Fitzpatrick in the sum of $4,000 as security for said notes and on the same day Anna Fitzpatrick executed and acknowledged a satisfaction of the said mortgage which together

with the notes were delivered to Joseph F. McCloy, an attorney, who prepared the agreement, to be held by him in escrow.

The agreement provided that the satisfaction of the mortgage and the notes were to be delivered as follows: In the event of the death of Anna Fitzpatrick or after the expiration of two years and six months, the notes were to be deemed paid and delivered to the said Joanna R. Cleary, together with the satisfaction of mortgage. In the event of the death of Joanna R. Cleary during the two and one-half year period Mr. McCloy was to deliver to Anna Fitzpatrick as many of the notes held in escrow as there were calendar months from date of death to the expiration of the said period, said notes to be delivered one each thirty days during Anna Fitzpatrick's lifetime and upon payment of the last of these notes the mortgage was to be satisfied. If Anna Fitzpatrick should die following the death of Joanna R. Cleary and prior to the expiration of the two and one-half year period, the remaining notes were to be deemed paid and the satisfaction delivered to her representative.

The deed and mortgage were executed and delivered July 18, 1927, and Anna Fitzpatrick died approximately four months later. The satisfaction of the mortgage dated July 28, 1927, was recorded November 28, 1927, eight days after her death.

The objections here filed set forth in substance that the agreement between Anna Fitzpatrick and Joanna R. Cleary relating to the transfer of the half interest in the Watervliet property was obtained by fraud and undue influence; that said agreement is invalid, inequitable and unconscionable; that the said transfer was made in bad faith, and that as there was $8,000 of personal property in the estate which could have been used for the support and maintenance of the said Anna Fitzpatrick that transfer of the real estate was unnecessary and that in making the same she violated her duties as executrix.

Anna Fitzpatrick was, at the time of making the agreement for the transfer of the real estate, a woman about eighty-seven years of age. She was apparently feeble and unable to go out of the house except in the summer time and there is evidence indicating that her faculties were impaired. That she was incapable of managing her own property or of handling the property of the estate of which she was executrix is evidenced by statements contained in her own verified petition asking to be relieved as executrix, dated June 8, 1927, where she sets forth that on account of her age and infirmities she took no active part in the administration of the estate, and that she " is physically unable to discharge her duties as executrix." Joanna R. Cleary is a school teacher fifty-five years

of age, residing in New York city. Mr. Walsh testified that shortly after his appointment as executor of Sarah Fitzpatrick's estate, Miss Cleary asked him to sell this one-half interest in the real estate to her for one dollar, and that similar requests were made by her at other times. At the time of the making of the agreement on July eighteenth, Joanna R. Cleary had already obtained by deed Anna Fitzpatrick's half interest in the Watervliet property, and the agreement contemplated the transfer of the other half interest in which Anna Fitzpatrick had a life estate with power to invade the principal. The stated consideration of $4,000 was to be paid by Joanna R. Cleary not in money but by support and maintenance of Anna Fitzpatrick for the period of her natural life, but in no event for a period longer than two years and six months which was calculated as her expectancy. The thirty promissory notes of $133.33 each were to be considered paid, one for each month that Miss Cleary supported Miss Fitzpatrick, but in the event of the death of Miss Fitzpatrick before the expiration of the two years and six months all of the notes were to be deemed paid and the mortgage given as security for the notes satisfied. Mr. McCloy was called in by Miss Cleary's sister and evidently acted as attorney for both parties in this transaction, although prior to that time Anna Fitzpatrick had been represented by Mr. McLean of Watervliet, who, when the plan which was later embodied into the agreement of July eighteenth, was outlined to him, refused to have anything to do with the transaction.

Anna Fitzpatrick died four months after the making of the agreement and at the rate of $133.33 per month, Joanna R. Cleary received a half interest in this real estate valued at $4,000 for something less than $550. By the transaction the remaindermen were deprived of upwards of $3,250. It seems to me that, from all the circumstances disclosed by the evidence in this proceeding, the transaction is inequitable and unconscionable.

At the time the agreement was made there was $8,000 in personal property, consisting of marketable securities, available for the support and maintenance of Anna Fitzpatrick. This property was in the hands of Mr. Walsh, the coexecutor under Sarah Fitzpatrick's will, and he testified that he always gave her whatever money she asked for. No bills or claims for support of Anna Fitzpatrick were presented to him during the time he acted as executor and until February 21, 1927, which he refused to pay. No application was ever made to this court, nor from the evidence to any other court, to obtain any of this personal property for the use of Anna Fitzpatrick. Assuming that Mr. Walsh, as coexecutor, had refused to turn over the property in his possession for her use

it is obvious that had application been made to the court Anna Fitzpatrick would have been granted the necessary relief. I am not unmindful of the fact that under the rule laid down by the Court of Appeals in *Matter of Davies* (242 N. Y. 196) a life estate coupled with a power given a life tenant under a will to dispose of the fee for his own benefit gives to the life tenant practically the same right of enjoyment and power of disposition as a fee of the same property. Nor do I question the right of a creditor to enforce a sale of this property to satisfy a debt. I do not believe, however, that in view of the circumstances such a transaction as here involved has ever received the sanction of our courts. Whether Anna Fitzpatrick was acting as executrix at the time the transfer was made or whether she had been relieved by the decree of Surrogate LAWYER under date of June 10, 1927, is not essential to a finding that the transaction here involved is improper and inequitable. No fixed rule may be found governing cases of this character. Equity will intervene to protect a person in an enfeebled condition arising from advanced age against imposition by others, or against manifest improvidence though there be no actual fraud.

I find that the agreement entered into under date of July 18, 1927, between Anna Fitzpatrick and Joanna R. Cleary is unconscionable and invalid. If a valid claim in favor of Joanna R. Cleary existed at the date of the death of Anna Fitzpatrick she will be given an opportunity to prove the same.

The item marked Schedule B in the account is disallowed and it is decreed that Joanna R. Cleary reconvey to the estate of Sarah E. Fitzpatrick a one-half interest in the property known as 1807 Third avenue, Watervliet, N. Y., heretofore conveyed to her by Anna Fitzpatrick by deed dated July 18, 1927.

Decree may be entered accordingly.